1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9        SOUTHERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,          Case No.:  3:15-cv-01859-L-DHB

12                        Plaintiff,    **ORDER GRANTING IN PART AND**
                                        **DENYING IN PART PLAINTIFF'S**
13   v.                                 **MOTION TO STRIKE**
                                        **INSUFFICIENT DEFENSES, AND**
14   1.647 ACRES (0.826 +/- ACRES – E   **DENYING MOTION FOR**
     STREET CORRIDOR AND 0.821+/-       **JUDGMENT ON THE PLEADINGS**
15   ACRES – F STREET CORRIDOR) OF
     LAND, MORE OR LESS, LOCATED IN
16   SAN DIEGO COUNTY, STATE OF
     CALIFORNIA; SAN DIEGO UNIFIED
17   PORT DISTRICT; STATE OF
     CALIFORNIA; AND UNKNOWN
18   OWNERS,

19
                        Defendants.
20

21

22        Pending before the Court in this condemnation action is the Government's motion

23   to strike defenses pursuant to Federal Rule of Civil Procedure 12(f), or in the alternative

24   for judgment on the pleadings under Rule 12(c).  The motion is fully briefed and decided

25   on the briefs without oral argument.  *See* Civ. Loc. R. 7.1.d.1.  For the reasons which

26   follow, the Government's motion for judgment on the pleadings is DENIED.  Its motion

27   to strike is GRANTED in part and DENIED in part.

28
                                        1

## I.   **BACKGROUND**

The Government filed this eminent domain action on behalf of the United States Navy as a part of the Navy Broadway Complex redevelopment project in order to acquire a fee interest in one-block segments of E and F streets in San Diego, California. (Compl. at 2, ¶ 1, 3; Decl. of Taking, Schedule B). The action is based on 10 U.S.C. § 2663(c)(1), which provides in relevant part,

> The Secretary of a military department may acquire any interest in land that- -[¶] (A) the Secretary determines is needed in the interest of national defense; and [¶] (B) does not cost more than $750,000, exclusive of administrative costs and the amounts of any deficiency judgments.

The street segments the Navy wants to condemn will be used to

> ensure the security of Naval personnel and property located on abutting lands of the United States; to provide public and Naval access, including but not limited to subterranean, surface, and aerial vehicular, pedestrian, and utility access, to abutting lands of the United States; for use as public streets; and for such other uses as may be authorized by Congress or by Executive Order.

(Decl. of Taking, Schedule B).

The land in question, along with the Navy's adjoining property, was the subject of a similar eminent domain dispute between the same parties in 1990. In *United States v. 15.320 Acres of Land, More or Less, in San Diego County,* No. 90-1562 (S.D. Cal. 1990) ("*15.320 Acres*"), the Government filed a complaint-only condemnation action. In July 1991, Judge William B. Enright granted the Government's first motion for partial summary judgment to quiet title to the land abutting the street segments. (Gov't Ex. 1 at 14:9-18).[1]  In September 1991, Judge Enright denied the second motion for partial

---

[1]      The Court takes judicial notice of the exhibits filed in support of and in opposition to the instant motion, all of which either were filed in this District in a related action, or are recorded real estate documents.  Courts may consider material properly subject to

summary judgement and rejected the contention that the Government already owned the street segments, and could condemn a fee interest in the street segments solely to incorporate the land into the Navy Broadway Complex.  (Gov't Ex. 2 at 7:5-8, 11:24-12:4).  The Court noted, "[T]he United States dictated the framework within which its motion was viewed by asserting that it had the authority to take the property at issue regardless of whether it was reopened as a public street or integrated in the complex itself."  (*Id*. at 11:5-9).

Following the September 1991 ruling, the Government amended its complaint to take a perpetual assignable easement of the street segments, and updated its proposed public uses so that the street segments would "provide public access, including but not limited to subterranean and surface vehicular, pedestrian and utility access, to abutting lands of the United States."  (Gov't Ex. 4 at 2:16-20).  The Government's third motion for partial summary judgment was granted in December 1991, because the Government committed to keeping the streets open to the public.  (Gov't Ex. 3 at 6).

Subsequently, the parties entered into a Stipulation for Judgment in which the Government waived its claim to the fee interest in the street segments, recognized fee ownership in the San Diego Unified Port District, and in which, upon payment of $1.00 to the Port District, an easement covering the street segments would be condemned to the Government for use in perpetuity for public street purposes. (Gov't Ex. 5 at 2:4-27). Judge Enright incorporated the stipulation into the final judgement issued in December 1992.  (Gov't Ex. 6 at 6:9-28).

---

judicial notice without converting the motion into one for summary judgment.  *See Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).  "[A] court may take judicial notice of matters of public record."  *Intri-Plex Technologies, Inc. v. Crest Group, Inc*., 499 F.3d 1048, 1052 (9th Cir. 2007); *see also* Fed. R. Evid. 201(b)(2).

In the pending action, Defendants object that the taking is: (1) not statutorily authorized (Cal. Answer at 3, ¶5; Port Answer at 2, Third Separate Defense); (2) not for a valid public use and that the United States is precluded from relitigating that it is (Cal. Answer at 2, ¶¶ 1, 2; Port Answer at 2, First and Second Separate Defenses); and (3) barred by waiver and *res judicata* principles which Defendants assert are supported by judicial estoppel (Cal. Answer at 2, ¶ 1; Port Answer at 3, Fourth Separate Defense).  The Government moves to strike these defenses pursuant to Federal Rule of Civil Procedure 12(f), or in the alternative, seeks a judgment on the pleadings pursuant to Rule 12(c). Defendants' objections regarding valuation (Cal. Answer at 2, ¶¶ 3, 4; Port Answer at 3, Fifth Separate Defense), are not challenged in the pending motion.

## II.   DISCUSSION

The Government filed a motion to strike under Rule 12(c), seeking judgment on the pleadings as to certain defenses asserted in Defendants' answers, or in the alternative to strike certain defenses.

> Judgment on the pleadings is proper when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law.  All allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party. As a result, a plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery.

*Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989) (citations omitted).

The Government at most requests a partial judgment as to some, but not all defenses.  Even if the Government prevailed on all defenses, it would still have to prove its case.  Accordingly, by completely prevailing on its motion, the Government would at best obtain a partial judgment.  Partial judgments are disfavored.  *See* Fed. R. Civ. Proc. 54(b); *Reiter v. Cooper*, 507 U.S. 258, 265 (1993) (In light of the "historic federal policy against piecemeal appeals," partial judgments are disfavored.); *Wood v. GCC Bend, LLC,*

4

422 F.3d 873, 878 (9th Cir. 2005).  To the extent the Government moves for a judgment on the pleadings, its motion is DENIED WITHOUT PREJUDICE.

In the alternative, the Government moves to strike under Rule 12(f), which gives the court authority to "strike from a pleading an insufficient defense."  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994) (internal quotation marks, brackets, and citation omitted).  While Rule 12(f) motions are generally disfavored when filed as a dilatory tactic, "they serve to expedite, not delay" when filed to "remove unnecessary clutter from the case."  *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). The relevant issue on a Rule 12(f) motion to strike an insufficient defense is whether the defense is insufficient as a matter of law.  *See id.*

### A.    Statutory Authority

Defendants challenge Plaintiff's statutory authority for the taking on three grounds: (1) that the Navy improperly relies on 10 U.S.C. § 2663(c) as authority to acquire the land at issue; (2) that the Navy did not deposit estimated just compensation in good faith; and (3) that the Navy failed to follow procedures set forth in the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (the "Acquisition Policies Act").  None of Defendants' arguments is availing because (1) the plain language of 10 U.S.C. § 2663(c) authorizes the Navy to acquire the land at issue; (2) the Government's estimated just compensation is not reviewable by courts for good faith; and (3) the guidance set forth in the Acquisition Policies Act does not confer a private right of action. Defendants' statutory authorization defense is therefore insufficient as a matter of law. The Government's motion to strike this defense is therefore GRANTED.

Title 10 U.S.C. § 2663(c) authorizes the Secretary of a military department to acquire any interest in land that "does not cost more than $750,000, *exclusive of*

*administrative costs and the amounts of any deficiency judgments*," when the Secretary determines doing so is in the interest of national defense.  (Emphasis added).  To make the acquisition, the department may file a declaration of taking containing, *inter alia*, "a statement of the amount of money estimated by the acquiring authority to be just compensation for the land taken."  40 U.S.C. § 3114(a)(5).  If the compensation finally awarded in the proceedings exceeds the estimated amount, the court enters judgment against the Government for the amount of the deficiency.  *Id.*  The judgment includes interest on the difference between the amount finally awarded and the estimated compensation already deposited. *Id*. §3114(c)(1).

Relying on statutory interpretation principles, the State of California first argues that the Government lacks authority under § 2663(c) because, if authority exists, it could take advantage of the $750,000 cost limitation by making a bad faith estimate of just compensation, and paying any additional compensation owed in the form of a deficiency judgment.  This argument is unavailing because it is contrary to the plain meaning of the statute.

If the language of a statute is clear, courts look no further than that language to determine the statute's meaning.  *Seattle-First Nat. Bank v. Conaway*, 98 F.3d 1195, 1197 (9th Cir. 1996).  Section 2663(c) unambiguously provides that the $750,000 limitation on low-cost acquisitions does not include the amount of deficiency judgements. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, cited by Defendants, is distinguishable because the meaning of the relevant statute was unclear.  467 U.S. 837 (1984) (analyzing whether EPA's regulation of devices within the same "bubble" was a reasonable construction of the statutory term "stationary source").

Here, §2663(c) expressly provides that if the judgement ultimately awarded is greater than the estimated value, the owner shall recover the excess with interest.  *United States v. Miller*, 317 U.S. 369, 381 (1943); *see also United States v. 32.42 Acres of Land*, 683 F.3d 1030, 1034 (9th Cir. 2012) (finding § 2663(c) duly authorized the Government

6

in taking where the estimated compensation was below the low-cost acquisition limit despite a final judgment of $2,910,000) .[2]   The purpose of the estimated deposit is to allow the Government to take immediate possession of the property, and relieve it of the burden of interest accruing on the deposited sum.   *Miller,* 317 U.S. at 381.

Defendants also contend that the Navy's authority is questionable because Congress did not expressly authorize the condemnation of property in connection with the Navy Broadway Complex redevelopment project.   The Court disagrees.   Where the Congress gives general authority to acquire real property, no additional authority to acquire a specific piece of property or property for a specific purpose is necessary.   *See United States v. Kennedy*, 278 F.2d 121 (9th Cir. 1960).   Defendants' challenge to the Government's authority under §2663(c) is therefore rejected.

Next, the Port questions whether the Government's estimated deposit is a valid exercise of good faith, and argues the Court should determine whether the amount is reasonable.   A district court has no authority to evaluate the good faith of the Government's deposit.   *United States v. Cobb*, 328 F.2d 115 (1964).

Although the Port concedes that the reasonableness of a deposit is not normally subject to judicial review, it relies on *Catlin v. United States*, 324 U.S. 229 (1946), to argue that an exception exists to allow a landowner to challenge the validity of a taking for departure from statutory limitations.   The petitioners in *Catlin* attempted an interlocutory appeal to review the denial of their motions challenging—as here— statutory authority for the taking.   *Id.* at 232.   The Court held that the ordinary rule, which

---

[2]Defendants attempt to distinguish these precedents by pointing to an appraised, non-nominal estimate made by the Government.   This appears to be a distinction without a difference, because the Ninth Circuit focuses on following the statutory procedure.   *See 32.42 Acres of Land*, 683 F.3d at 1034 ("The United States has followed the procedure outlined in 40 U.S.C. § 3114, and its action was duly authorized by 10 U.S.C [§ 2663(c)].").

only allows appeals upon an order or judgment disposing of the condemnation action, also applied to condemnation proceedings under the War Purposes Act of 1917. *Id.* at 233-34. Although Defendants' contention that *Catlin* allows landowners to challenge a taking for departure from statutory limits is correct, the challenge is possible only on appellate review. *See id.* at 240-41.

Finally, Defendants contend that the Acquisition Policies Act, 42 U.S.C. § 4651(4), requires that the Government's estimated deposit be no less than an approved appraisal value of the property. The Act expressly provides that § 4651 "shall not affect the validity of any property acquisitions ... by condemnation." 42 U.S.C. § 4602(a). Defendants' argument is therefore rejected.

Alternatively, the argument is rejected because the Acquisition Policies Act at best provides guidance to the Government, and does not provide a basis for a private right of action. In pertinent part, the Act provides, "In order to encourage the acquisition of real property *by agreement* with owners, to avoid litigation . . . Federal agencies shall, *to the greatest extent practicable*, be guided by the following polices." 42 U.S.C. § 4651 (emphasis added). Although this issue has not yet been decided by the Ninth Circuit, other Circuits have found that "the guidelines presented in §4651 are only that." *United States v. 131.68 Acres of Land*, 695 F.2d 872, 876 (5th Cir. 1983). In *Paramount Farms, Inc. v. Morton*, the Seventh Circuit reviewed allegations that the National Park Service failed to appraise the relevant property as suggested by the Act. 527 F.2d 1301, 1303 (7th Cir. 1975). Finding that the statute precluded judicial review, the court held that condemnation actions may not be affected by alleged noncompliance with the Act. *Id.* at 1302, 1305 (internal citation omitted). "In short, the Policy Act's language, legislative history, judicial decisions and policy consideration all compel the conclusion that Congress never intended to permit judicial review of agency action taken or omitted pursuant to guidelines in section 4651." *Id.* at 1306. *See also*

8

*Consumers Power Co. v. Costle,* 468 F. Supp. 375, 377 (E.D. Mich. 1979) aff'd, 615 F.2d 1147 (6th Cir. 1980) (finding the Act is intended to set forth guidelines rather than to create rights giving rise to a legal cause of action); *Nall Motors, Inc. v. Iowa City, Iowa*, 410 F. Supp. 111 (S.D. Iowa 1975) aff'd 533 F.2d 381 (8th Cir. 1976) (finding landowners entitled to no relief for alleged violations of the Act by virtue of 42 U.S.C. § 4602).

For the foregoing reasons, the plain language of §2663(c) authorizes acquisition of land in a manner consistent with the Government's actions in this case.  The Court is precluded from reviewing the Government's estimated just compensation for either lack of good faith or for the absence of an appraisal in accordance with the Acquisition Policy Act.  Defendants' lack of statutory authorization defense is therefore insufficient as a matter of law.  The Government's motion to strike this defense is GRANTED.

### B.    Public Purpose and Issue Preclusion

Defendants also argue that the taking is not for a valid public purpose, and that issue preclusion bars the Government from attempting to argue that it is.  On the other hand, the Government contends that issue preclusion bars <u>Defendants</u> from relitigating whether the stated public use is valid.  Because the parties have already fully litigated the public purpose issue in *15.320 Acres*, and the prior court found they were valid public uses, the Government's motion to strike Defendants' public use and issue preclusion defenses is GRANTED.

Issue preclusion bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgement.  *Taylor v. Sturgell*, 553 U.S. 880, 892 n.5 (2008).  Issue preclusion applies when

(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom issue preclusion is asserted was a party or in privity with a party at the first proceeding.

*Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011) (internal quotation marks, citation and brackets omitted).

In prior litigation, Judge Enright found in December 1991 that the public access proposed by the Government constituted public purpose and therefore "the proper subject of an exercise of eminent domain." (Gov't Ex. 3 at 6:6-10). Based on this finding, the court granted partial summary judgment in the Government's "favor as to its right to take" the property at issue. (*Id*. at 6:27-7:1.) The order was explicitly based on the Government's commitment to public access. (*Id.* at 7:1- 4.) Subsequently, the parties entered into a Stipulation for Judgment, which relied on this ruling. (Exhibit 5 at 2:4-5). Judge Enright incorporated the terms of the stipulation into the Final Judgment in Condemnation, which condemned the property for "use in perpetuity for public street purposes." (Exhibit 6 at 2:28-3:1).

Defendants now wish again to challenge the same public use of the same property. (*See* Decl. of Taking, Schedule A (description of public uses)). They argue that because the Government is seeking to condemn a fee interest instead of an easement, as was the case in prior litigation, the issue is different and therefore open to litigating again. This is a distinction without a difference. "Once the question of the public purpose has been decided, the amount and character of land to be taken" is not the proper subject of judicial review. *United States v. 80.5 Acres of Land*, 448 F.2d 980, 983 (9th Cir. 1971).

Furthermore, the first proceeding ended with a judgment on the merits. The public purpose issue was decided in an interlocutory ruling, but the decision was referenced as the basis for settlement, which was then incorporated into the final judgment.

Although interlocutory opinions are generally subject to revision by the issuing court, where the parties were heard, the court supported its decision with reasoned opinion, and the decision was subject to appeal, the issue may be precluded from future relitigation. *Luben Industries, Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983). Issue preclusion applies to interlocutory rulings, if the prior adjudication was sufficiently firm to be given a conclusive effect, *id.*, and is consistent with the subsequent judgment entered in the case. *Hartley v. Mentor Corp.*, 869 F.2d 1469, 1472 (Fed Cir. 1989); *Employees Own Fed. Credit Union v. City Of Defiance*, 752 F.2d 243, 245 (6th Cir.1985); *Swift Chem. Co. v. Usamex Fertilizers, Inc.*, 646 F.2d 1121 (5th Cir.1981).

Unlike in *Luben*, where the court declined to give preclusive effect to an unappealable interlocutory memorandum, Defendants could have proceeded to judgment instead of settling, and they could have challenged Judge Enright's decision regarding public purpose. *See Catlin*, 324 U.S. at 233-34. The decision was rendered after the parties were fully heard, it was a firm decision, sufficiently supported to give conclusive effect, and consistent with the ultimate final judgment.

The settlement does not bar issue preclusion. A party wishing to assure that it will not be precluded from relitigating after settlement an issue that had been previously decided, must have the earlier order vacated prior to final judgment. *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686 F.2d 720, 721-22 (9th Cir. 1982). Defendants did not request that the summary judgment ruling be vacated, but agreed to expressly incorporate it in the Stipulation for Judgment. Defendants' argument that Judge Enright's public purpose determination was open to relitigation is rejected.

Alternatively, Defendants contend that in prior litigation Judge Enright had found that the taking of a fee interest in the same property was <u>not</u> for a valid public purpose, and that this ruling should be given issue preclusive effect to defeat the pending action. Defendants rest their argument on a faulty premise. In his September 1991 order, Judge Enright made a finding that the Government's lack of commitment to opening the

3:15-cv-01859-L-DHB

property to public access precluded a finding of public use.  (Gov't Ex. 2 at 8-9; *see also id.* at 11:5-9; Ex. 3 at 3).  When the Government later committed to opening the property to public access, Judge Enright ruled in his December 1991 order, it was "the proper subject of an exercise of eminent domain."  (Gov't Ex. 3 at 6).  This was consistent with his reasoning in September, where he stated that "use by the public would clearly fall within the outlines of traditional eminent domain case law."  (Ex. 2 at 8:24-9:3).

In conclusion, the parties already had a full and fair opportunity to litigate the public purpose issue.  Judge Enright found that the Government's proposed use is a public use for purposes of eminent domain.  This finding was the basis for the parties' settlement and ultimately judgment.  Accordingly, issue preclusion bars Defendants from relitigating the same issue.  The Government's motion to strike the public use and issue preclusion defenses is GRANTED.  The Court therefore need not address Defendants' arguments regarding pretext for the uses stated in the Declaration of Taking.

### C.   Waiver

The Port also alleges that the Government waived its claim for the fee interest when it signed the settlement agreement, thus barring it from condemning a fee interest in the same property by filing this action.  The Government counters that an executive agency lacks the power to waive the sovereign right of eminent domain by contract.  The power of eminent domain "cannot be surrendered, and, if attempted to be contracted away, it may be resumed at will."  *Georgia v. City of Chattanooga,* 264 U.S. 472, 480 (1924); *see also Pennsylvania Hospital v. City of Philadelphia*, 245 U.S. 20, 23 (finding the ability to contract away the power of eminent domain "would be a renunciation of power to legislate for the preservation of society") (citation omitted).  The Government's motion to strike the defense of waiver is therefore GRANTED.

### D.   *Res Judicata*

Finally, Defendants contend that the pending action constitutes the same claim or cause of action as the prior litigation in *15.320 Acres*, and is therefore barred by *res*

*judicata*.  They argue that the two actions stem from the same transactional nucleus of facts, the instant case implicates potential infringement of rights or interests established in the prior litigation, and the two cases are based on essentially the same evidence.

The Government counters that *res judicata* at most applies to bar certain issues arising in eminent domain cases because eminent domain is an essential sovereign authority which renders *res judicata* inapplicable to prevent "successive condemnations" of the same property.  Although the Government raises compelling policy considerations regarding sovereign authority, the cases cited by the Government in support of its argument are unpersuasive.  They relate to condemnations of different leasehold interests in the same parcel of land over time.  The cases focus on the exclusion of prior just compensations amounts as evidence of just compensation for the same leasehold in a subsequent proceeding.  *See, e.g., United States v. Johnson*, 420 F.2d 955, 956 ("the doctrine of res judicata is inapplicable in a situation involving successive condemnation proceedings, each taking the property for a term of years").  None of the cases implicates successive eminent domain proceedings involving a fee simple interest.

Alternatively, the Government argues that the passage of twenty years since the prior action, the different methods of condemnation used, the different interests sought, and a property valuation create a sufficiently distinct set of facts to create a separate cause of action, and preclude the application of *res judicata*.  Defendants counter that the Government should be judicially estopped from asserting change in circumstances because of an inconsistent position it took in *California Coastal Commission v. United States Navy et al.*, 22 F. Supp. 3d 1081 (S.D. Cal. 2014), where it argued no significant changes to the same property for purposes of the Coastal Zone Management Act.

"Judicial estoppel ... precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. It is an equitable doctrine intended to protect the integrity of the judicial process by preventing a litigant from playing fast and loose with the courts." *Helfand v. Gerson*, 105 F.3d 530,

534 (9th Cir. 1997) (internal quotation marks and citations omitted); *see also New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

The Government's position in *California Coastal Commission* related to changes in circumstances that implicate "substantially different coastal effects" within the meaning of 15 C.F.R. § 930.46(a), rather than to the passage of time or property value, and it involved a different property interest than the fee interest sought in the instant case. *See California Coastal Commission*, 22 F. Supp. 3d at 1088, 1096. The position the Government took in *California Coastal Commission* is not incompatible with its position here. Furthermore, Defendants have not demonstrated the Government's intention to manipulate the judicial system. The Court therefore declines to apply judicial estoppel against the Government.

Accordingly, the Government has not shown that *res judicata* is inapplicable in bar the pending action. Its motion to strike the *res judicata* defense is therefore DENIED WITHOUT PREJUDICE to renewing the argument. At the same time, the Government is not estopped from asserting a change in circumstances to counter *res judicata* in further proceedings in this case.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, the Government's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is DENIED WITHOUT PREJUDICE. Its motion to strike under Rule 12(f) is GRANTED IN PART AND DENIED IN PART. The motion is granted as to the statutory authorization, public use, issue preclusion, and waiver defenses. It is denied as to the *res judicata* defense. Because the insufficient defenses fail as a matter of law, leave to amend is denied as futile.

**IT IS SO ORDERED.**

Date: March 22, 2017

Hon. M. James Lorenz
United States District Judge

14

3:15-cv-01859-L-DHB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3:15-cv-01859-L-DHB